IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 25-cr-221-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **DAVONTE DEWAYNE SHORTS**,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S APPEAL OF MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR RELEASE WITH CONDITIONS**

---

    This matter is before the Court on Defendant DaVonte Dewayne Shorts' Appeal of Magistrate Judge's Detention Order and Request for Release with Conditions (the "Appeal").  (ECF No. 17.)  The Government filed a response (ECF No. 19), to which Shorts filed a reply (ECF No. 22).  The Court heard oral argument on the Appeal on December 11, 2025.  (ECF No. 23.)

    The Court acknowledges at the outset that this Appeal presents an exceedingly close question.  Ultimately, however, the Court's *de novo* review of the relevant factors under the Bail Reform Act, 18 U.S.C. § 3142, lead it to the conclusion that Magistrate Judge Susan B. Prose's August 6, 2025 order of detention should be reversed, and Shorts' request to be released on bond with appropriately restrictive conditions should be granted.

## I.     BACKGROUND[1]

On July 22, 2025, a grand jury indicted Shorts with one count of bank robbery and aiding and abetting the same in violation of 18 U.S.C. §§ 2113(a) and (2). (ECF No. 3.) Specifically, Shorts stands accused of robbing an ATM in Lakewood, Colorado on July 18, 2025, alongside a second suspect whose identity remains unknown to the Court. (*See generally* ECF No. 1-1.) A jury trial is currently set for February 9, 2026. (ECF No. 16.)

Shorts made his initial appearance before Judge Prose on August 1, 2025, at which time the Government requested pretrial detention. (ECF Nos. 5, 7.) Judge Prose set a detention hearing for August 6, 2025. (ECF No. 7.) Prior to the hearing, the United States Probation Office prepared a pretrial services report ("PTSR"), in which it recommended detention based its assessment of Shorts' risk of nonappearance and danger to the community. (ECF No. 13.)

At the hearing, the Government substantially relied on the factual allegations set forth in the affidavit appended to the criminal complaint and the PTSR in similarly urging that there were no conditions or combination of conditions that could reasonably assure Shorts' appearance or the safety of the community. (ECF No. 20 at 7; *see also generally* ECF Nos. 1-1, 13.) The Government argued that the charged offense "fits firmly within crime of violence" and that the evidence against Shorts was "extremely strong." (ECF No. 20 at 13, 17.) It further emphasized Shorts' criminal history, including that he has three prior felonies (one juvenile adjudication and two adult

---

[1] This background is substantially derived from the parties' briefs on the Appeal, the exhibits submitted in support thereof, and the transcript of the August 6, 2025 detention hearing before Judge Prose. (*See generally* ECF Nos. 17, 19, 20, 22.)

convictions), was on bond in a pending case in Florida at the time of the offense, and had one prior failure to appear in connection with a criminal proceeding in Alabama. (*Id.* at 13–14; *see also* ECF No. 13 at 3–6.)   Lastly, the Government noted that Shorts did not appear to have "a very stable life" or consistent employment in Houston, Texas, where he is from.   (ECF No. 20 at 15.)

Shorts, for his part, argued that he should be released on conditions to the custody of his mother in Houston or, should the Court wish him to remain in the District of Colorado, to a halfway house in the Denver area.   (ECF No. 20 at 26–27.)   While acknowledging that the Government had "a strong circumstantial case," he challenged the notion that "the evidence [was] so overwhelming that there is no . . . combination of conditions that can be imposed to ameliorate danger."   (*Id.* at 21.)   And, in contrast with the Government's position, Shorts submitted that his criminal record was "relatively limited" and "devoid of . . . violent offenses" and—with one, excusable exception—that he had a demonstrated history of appearing in court when required.   (*Id.* at 25, 27.)

Ultimately, Judge Prose found that the Government had met its burden to show both danger to the community by clear and convincing evidence and risk of flight by a preponderance of the evidence.   (*Id.* at 35–37.)   As to the former, she reasoned that the evidence supporting the allegations against Shorts was "sufficiently strong" to support the danger assessment.   (*Id.* at 36.)   While appreciating the fact that no physical harm had occurred, Judge Prose was persuaded by "the Tenth Circuit's discussion" that safety concerns more than "the mere danger of physical violence" and also "refers to the danger that the defendant might engage in criminal activity to the detriment of the community."   (*Id.*)   As to the latter, Judge Prose appears to have been

"less motivated" by Shorts' criminal record but was sufficiently concerned that "the allegations of alluding" demonstrated that he had a "quite demonstrable wish to flee from the police." (*Id.*)

Shorts filed this Appeal on November 21, 2025. (ECF No. 17.) The parties continue to rely substantially on the allegations in the criminal complaint and the PTSR in support of their respective positions, with the exception that Shorts has additionally obtained letters from his mother, girlfriend, and a close friend in support of his request for release. (ECF Nos. 17-2, 17-3, 17-4.) The parties have also proffered additional information concerning the pending criminal case against Shorts in Florida. (ECF No. 17-1; ECF No. 23 (referencing the two exhibits offered by the Government and accepted by the Court during the December 11, 2025 hearing).) Following oral arguments on December 11, 2025, the Appeal is ripe for adjudication. (ECF No. 23.)

## II.   APPLICABLE LAW

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). Accordingly, where, as here, a defendant is charged with a crime that does not carry with it a presumption of detention, they may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *id.* § 3142(b), (c). The government bears the burden to prove risk of flight by a preponderance of the evidence and dangerousness to any other person or to the community by clear and convincing evidence. *See id.*

§ 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer must consider:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A district court's review of a magistrate judge's order of detention is *de novo*. *Cisneros*, 328 F.3d at 616 n.1. The district court may, in its discretion, "start from scratch and take evidence," or it may "review the evidence that was before the magistrate judge and make its own independent determination as to whether the magistrate judge's findings and detention order are correct." *United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2010) (internal quotation marks and citations omitted).

### III.   ANALYSIS

It bears reiterating that, in this non-presumption case, the Government carries the burden of demonstrating risk of flight by a preponderance of the evidence and dangerousness to the community by clear and convincing evidence. *Cisneros,* 328 F.3d at 616. On *de novo* review, the Court independently evaluates the 18 U.S.C. § 3142(g) factors "in determining whether there are conditions of release that will

5

reasonably assure" Shorts' appearance as required and the safety of the community.

### A.     Nature and Circumstances of the Offense

The Court first considers the nature and circumstances of the offense charged. 18 U.S.C. § 3142(g)(1).

Shorts, for his part, emphasizes that the alleged offense did not involve a weapon, threats of violence, or injury to any person. (ECF No. 17 at 7.) While in no way intending to minimize the mental and emotional impact this incident surely had on the victim ATM technician, the Court, too, appreciates that the technician was able to "walk[] away from the vicinity of the ATM" while Shorts and his co-conspirator "quickly remove[d]" the cash-containing cassettes before driving off. (ECF No. 1-1 at ¶¶ 11–12.) Moreover, as the Court understands it, there is currently no evidence that Shorts used physical force against the ATM technician. Rather, the Government clarified during oral argument that it believes, based on the video surveillance, it was Shorts' co-conspirator who "grabbed [the ATM technician] by the shoulders and moved him assertively" to gain access to the ATM. (ECF No. 1-1 at ¶ 11; Tr. at 40.[2])

Notwithstanding the foregoing, the Court must also heed the Tenth Circuit's instruction that "[b]ank robbery by intimidation" is still a crime of violence inasmuch as it "involves the threatened use of force." *United States v. McCranie,* 889 F.3d 677, 681 (10th Cir. 2018); *see also* 18 U.S.C. 3156(a)(4) (defining "crime of violence" as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force"); *United States v. Goldsmith,* 2025 WL 2652867, at *4 (D. Colo. Sept.

---

[2] In this Order, quotations from the December 11, 2025 hearing are taken from the rough draft of the transcript prepared by the Court Reporter; the transcript is subject to revision before it is finalized by the Court Reporter.

16, 2025) (observing, in an ATM robbery case, that "completed bank robbery" is "undisputably [a] crime[] of violence").  And, as discussed at length at oral argument, the Court sees little daylight between the instant offense and the alleged offenses at issue in *Goldsmith*, in which the Court found the first factor "plainly support[ed]" detention*.  Goldsmith,* 2025 WL 2652876, at *1–3.  Indeed, the only notable distinction is that Goldsmith was charged with two bank robbery offenses (one completed and one attempted), *id.* at *3, but that is counterbalanced, in the Court's view, by the allegations here that Shorts fled through a residential area to avoid arrest, ultimately hiding in a shed in the backyard of a private residence.  (*See generally* ECF No. 1-1.)

For at least these reasons*,* the Court finds that the first factor weighs in favor of detention.  *Cf. Goldsmith,* 2025 WL 2652867, at *4.

**B.    Weight of the Evidence**

The Court next considers the weight of the evidence against Shorts.  18 U.S.C. § 3142(g)(2).

At the outset, the Court emphasizes that, since pretrial detention is not about guilt or innocence, the weight of the evidence "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community."  *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985); *see also United States v. Lizardi-Maldonado,* 275 F. Supp. 3d 1284, 1292 (D. Utah 2017) ("[T]o avoid falling down the rabbit-hole into the world into the world of '[s]entence first—verdict afterwards,' the Court considers the strength of the evidence in terms of that evidence's bearing on the risk of harm to the community.  The likelihood of conviction by itself has no bearing on the pretrial release decision.").

7

At the detention hearing before Judge Prose, Shorts pointed out some perceived weaknesses in the Government's evidence but did not "quibble with the idea that this is a strong circumstantial case." (ECF No. 20 at 21.) Rather, he more substantially argues that the weight of the evidence is "the least important § 3142(g) factor for the Court's consideration." (ECF No. 22 at 1 (citing *United States v. Townsend,* 897 F.2d 989, 994 (9th Cir. 1990) ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors.")).)

Moreover, he turns the inquiry regarding the relative weight of the evidence on its head in contending that, if the evidence against him "ultimately proves to be as strong as the government asserts, he has a powerful incentive to comply with his pre-trial release conditions based on the likelihood of conviction." (ECF No 22 at 2.) Defense counsel estimates that a conviction in this case would likely result in "an advisory guideline range of between four and six and a half years of incarceration." (*Id.; but see* ECF No. 19 at 7 (asserting that Shorts is "facing a statutory maximum of 20 years imprisonment here").) Thus, Shorts urges that he has "good reason to scrupulously comply with his release conditions and to thus strengthen a request that the Court vary below that advisory range when imposing a sentence." (ECF No. 22 at 2.)

While touting the "overwhelming" evidence against Shorts, the Government's briefing, by contrast, does not persuasively tether the weight of the evidence to the Court's evaluation of the likelihood that he will fail to appear or will pose a danger to any person or to the community. (*See generally* ECF No. 19 at 4–6.) While, as noted above, there seems to be little dispute that Shorts alluded arresting officers, the Court agrees with the defense that there is a reasonable distinction between fleeing to avoid

8

arrest in the immediate aftermath of an offense, and fleeing to avoid prosecution once "given the privilege to be out on bond and be free pending your trial." (Tr. at 47–48.)

Similarly, during oral argument, the Government attempted to draw an analogy between the discarding of the GPS-tracked ATM cassettes in a dumpster and Shorts' expected compliance with location monitoring if imposed as a bond condition. (Tr. at 42.) But, to accept this argument, the Court must draw factual inferences that, while plausible, it is not prepared to make at this stage—most significantly, that Shorts was even aware that the cassettes contained GPS trackers. And, in any event, "there's a huge difference," to the Court's mind "between a GPS tracking device on an ATM cassette and a[n] ankle monitor placed around a defendant to ensure his or her appearance at court." (*Id.* at 46.)

Balancing, on the one hand, that the weight of evidence against Shorts appears relatively strong at this stage and that he is likely facing a consequential sentence (a fact the defense suggests may cut both ways); and, on the other, that the Government has failed to persuasively connect the weight of the evidence to a finding that Shorts poses a high risk of danger or nonappearance if released on conditions, the Court considers the second factor neutral to its decision.

**C.     Danger to the Community**

The Court turns next to the fourth factor—the nature and seriousness of the danger to any person or the community that would be posed by Shorts' release. 18 U.S.C. § 3142(g)(4).

The Government emphasizes that Shorts has three prior felonies, including one juvenile adjudication for burglary of habitation, a 2020 conviction for evading arrest, and

9

a 2022 conviction for criminal mischief. (*See generally* ECF No. 13.) Moreover, Shorts is currently facing charges for burglary and grand theft in a Florida court. (*Id.* at 6.) Shorts is, of course, presumed innocent of those charges unless and until proven otherwise. However, for present purposes, it is not lost on the Court that Shorts was on bond in connection with those charges at the time of the instant offense. *Cf. Goldsmith,* 2025 WL 26527867, at *5 (same).

Shorts, for his part, emphasizes that his juvenile adjudication took place when he was only 14, and his adult convictions are otherwise for relatively minor, non-violent offenses. (ECF No. 17 at 7.) The Court agrees that those considerations are mitigating. Even so, given the Court's finding that the fourth factor "further support[ed] detention" as to Goldsmith—who, unlike Shorts, had "zero criminal history"—it cannot logically reach a different conclusion here. *Goldsmith,* 2025 WL 26527867, at *6 (emphasis omitted). The fourth factor thus weighs in favor of detention.

**D.     History and Characteristics**

Lastly, the Court considers Shorts' history and characteristics, including any known information regarding his

> (A)     . . . character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence under Federal, State, or local law.

18 U.S.C. § 3142(g)(3).

Among other considerations, the Government points to the fact that Shorts has

no ties to Colorado in asserting that he is a serious flight risk. (ECF No. 19 at 6.) That indeed appears to be the case. Shorts does, however, appear to have significant ties to the Houston area, where he has asked the Court to release him pending trial. (ECF No. 17 at 6.) Most significantly, Shorts' mother resides in Houston, and she has submitted a letter to the Court indicating that she is willing to act as her son's third-party custodian and have him reside with her at home, where he can be supervised by the local pretrial services office in the Southern District of Texas. (*Id.* at 6, 10; *see also* ECF No. 17-2.) She assures the Court that "[h]e has positive people to support him" in Houston "and see that he stays on the right path." (ECF No. 17-2 at 2–3; *see also* ECF Nos. 17-3, 17-4.)

The Government, of course, also relies heavily on Shorts' criminal history in asserting that the third factor weighs in favor of detention. (ECF No. 19 at 6.) Shorts also asserts, however, that his criminal record demonstrates that he "does not have a history of volitionally failing to appear." (ECF No. 17 at 6.) Though the pretrial services report reflects that Shorts has one prior failure to appear in connection with an Alabama proceeding, defense counsel has persuasively explained that this failure to appear was a consequence of his being in custody in Florida at that time. (*Id.* at 6.) Moreover, the parties informed the Court at oral argument that the Florida courts have issued an extradition warrant in connection with the concurrently pending charges against him there. But that warrant, too, is a product of his failure to appear for a November 6, 2025 court date, at which time Shorts was in custody in Colorado. Defense counsel explained that Shorts proactively informed the Florida court that he was in custody and requested permission to attend his court date by video, but that

request was apparently denied. (Tr. at 9–10.)

Given this context, the Court agrees with Shorts that neither the prior failure to appear nor the Florida extradition warrant should be counted against him for purposes of evaluating his record of appearance. And aside from those instances, Shorts' record otherwise demonstrates that he has a history of reliably appearing in court when required. (ECF No. 22 at 6.)

Based on the foregoing, the Court finds that the third factor weighs in favor of release.

****

In sum, two factors weigh in favor of detention, one factor is neutral, and one weighs in favor of release. Importantly, however, "[t]he Court's mandatory consideration of the section 3142 factors is not a matter of arithmetic—it necessitates an individualized and subjective *weighing* of those factors." *Goldsmith,* 2025 WL 2652867, at *5. To be sure, Shorts' prior felonies render this case an *even closer* call than the Court's decision as to Goldsmith. Nevertheless, as in that case, the general presumption of release and the fact that Shorts has not yet had an opportunity to demonstrate his ability to comply in good faith with restrictive bond conditions (home detention, travel restrictions, etc.), coupled with the unique fact here that—with two excusable exceptions—Shorts has a history of appearing in court when required, leave the Court cautiously optimistic that he will be successful on pretrial release under appropriately restrictive conditions. *Id.* Put another way, the Government has failed to persuade the Court that there is no condition or combination of conditions that will reasonably assure, by a preponderance of the evidence, Shorts' appearance as

required or, by clear and convincing evidence, the safety of the community. 18 U.S.C. § 3142(g).

The Court thus imposes the following conditions of release, *in addition to* all standard conditions of release imposed on defendants in these circumstances:

(1) Shorts shall post an unsecured appearance bond in the amount of $10,000;

(2) Shorts shall be placed in the custody of Tafaria Brooks, his mother, who agrees to (a) supervise him, (b) use every effort to assure his appearance at all court proceedings, and (c) notify the Court immediately if he violates a condition of release or is no longer in her custody;

(3) Shorts must reside with Tafaria Brooks at her home address;

(4) Shorts must submit and report to supervision in the Southern District of Texas (at the address provided by pretrial services);

(5) Shorts' travel shall be restricted to the Southern District of Texas and the District of Colorado for court purposes, absent prior approval from the Court;

(6) Shorts is restricted to his residence at all times except for employment, education, religious services, medical, substance abuse, or mental health treatment, court appearances, or other activities approved in advance by pretrial services; and

(7) Shorts shall submit to GPS monitoring or other electronic surveillance, as technological capabilities in the Southern District of Texas permit.

## IV.   CONCLUSION

Accordingly, the Court ORDERS as follows:

1. Defendant's Appeal of Magistrate Judge's Detention Order and Request

13

for Release with Conditions (ECF No. 17) is GRANTED and the Magistrate Judge's detention order is REVERSED;

2. The Court ORDERS the IMMEDIATE RELEASE of Defendant Shorts. The effective date of this Order, however, is **STAYED through December 30, 2025;**

3. Upon release, Shorts shall be subject to ALL CONDITIONS set forth above; and

4. Defendant is DIRECTED to submit a status report by no later than **10:00 am on December 29, 2025**, advising the Court of the status of defense counsel's efforts to address the extradition warrant recently issued by the Florida court. Should it wish to be heard on the matters raised in the status report, the Government may file a response to same by no later than **5:00 pm on December 29, 2025**. If a brief extension of the stay of this Order becomes necessary, either party may seek same by the filing of an appropriate motion.

Dated this 16th day of December, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge